## Case No. 657a.

AUMACH v. The QUEEN OF THE SOUTH.

[N. Y. Times, March 30, 1864.]

District Court, S. D. New York. 1864.

PLEADING—WAIVER OF OBJECTIONS —COLLISION— BETWEEN SAILING VESSELS.

[1. Exceptions in the answer to a libel will be deemed to have been waived if not determined before proof is taken at the trial of the cause.]

[2. A sailing vessel which mistakes the position and course of another sailing vessel, and luffs, thereby causing a collision, is liable for damages when, by keeping her course, she would have cleared such other vessel in safety.]

[In admiralty. Libel by John Aumach and others against the schooner Queen of the South for damages caused by collision. Decree for libelants.]

The libelants were the owners of the schooner J. E. Clayton, which was injured by a collision with the Queen of the South in the night of Nov. 26, 1856, off the lower end of the Cedars, on the New Jersey coast. The libel was filed March 5, 1857, and the answer Nov. 30, 1860. Two exceptions were taken in the answer, one alleging a nonjoinder of one part owner of the Clayton, and the other that the circumstances of the collision and the manoeuvers and faults which caused it were not set out with sufficient detail. The exceptions were not brought to argument until the trial of the cause.

Beebe, Dean & Donohue, for libelants.
Benedict, Burr & Benedict, for claimants.

SHIPMAN, District Judge. At this late stage of the case the court will deem all questions arising on the exceptions to have been waived. They should have been determined before the proofs were taken. On the proofs, although the evidence is very conflicting, the weight of it establishes the fact that the Clayton was coming up the coast close hauled; that the Queen of the South was going down the coast with a free wind; that at the time when those in charge of the Queen of the South ought to have discovered the Clayton—the former was to leeward of the latter; that had she kept her course she would have passed the Clayton to leeward and cleared her with safety; and that those in charge of the Queen of the South mistook the position or course of the Clayton, or both, and luffed, striking the latter on the starboard side, and causing the damage complained of. This luffing was a mistake for which the Queen of the South should be held responsible. Decree for libelants, with a reference.

AURELIUS, The, (FAIRCHILD v.) See Case No. 4,609.

## Case No. 658.

The AURORA.

Kentucky.

[Cited in The Rapid Transit, 11 Fed. 327. Nowhere reported; opinion not now accessible.]

## Case No. 659.

The AURORA.

CURRY v. The AURORA.

Superior Court, S. D. Florida. Nov. 28, 1840.

SALVAGE—COMPENSATION—FORFEITURE.

[Cited in Marv. Wr. & Salv. 232, as having held that where wreckers had unnecessarily lightened the bark of 205 bales of cotton, in order to magnify their services and obtain a larger salvage than that to which they were justly entitled, their whole salvage should be forfeited, notwithstanding they had rendered important services.]

[Note. Nowhere reported; opinion by MARVIN, J., not now accessible.]

## Case No. 660.

The AURORA.

[4 Hall, Law J. 473; Car. Law Repos. 204.][1]

District Court, D. Rhode Island. Feb. 4, 1813.

PRIZE—TRADING UNDER ENEMY'S PASS.

[Where an American ship-owner pays for, and obtains from an authorized agent of Great Britain, a British license of pass and trade, as protection for a voyage on the high seas, without the permission of his own government, the two countries at the time being at war, the ship is subject to capture and confiscation as prize of war.]

[In admiralty. Libel by the United States against the ship Aurora for condemnation as prize of war. Judgment of condemnation.]

HOWELL, District Judge. This was a libel against the ship Aurora, of Newburyport, prize to the privateer Governour Tompkins, of New York, found sailing under a British license. The principal documents produced on the part of libellants were—a consular copy of a letter from Admiral Sawyer, commanding on the Halifax station, referring to a previous correspondence between the admiral and Andrew Allen, Jr., British consul at Boston, on the subject of supplies from America. reciting the necessity and policy of maintaining a constant supply of provisions from America to the British West India islands, with assurances to the consul, that his majesty's vessels of war would be directed to permit to pass and fully to protect all American vessels so laden and bound, and which should have on board the pass or license of the consul, with a copy of the admiral's letter authenticated by the consul at Boston with such authenticated copy annexed; also, a pass of the consul from New-

---

[1] [Car. Law Repos. contains partial report only.]